SCHOENECKER, and another, Plaintiffs, v. HAINES, and another, Defendants and Third-Party Plaintiffs-Appellants: BAUER-ZORN, INC., and another, Third-Party Defendants-Respondents.

Supreme Court

*No. 76–603. Argued March 27, 1979.—Decided May 1, 1979.*
(Also reported in 277 N.W.2d 782.)

For the appellants there was a brief by *Thomas E. Greenwald* and *Graves, Greenwald, Maier & Miner* of

Rockford, Illinois, and oral argument by *Thomas E. Greenwald.*

For the respondents there was a brief by *John D. Winner, Susanna D. Herro* and *Winner, McCallum & Hendee* of Madison, and oral argument by *John D. Winner.*

HEFFERNAN, J. The only question presented on appeal is which of two automobile liability insurers is liable for $654 damages incurred as the result of an automobile accident.

Darlene E. Haines insured her personal automobile with the State Farm Mutual Automobile Insurance Company. On April 21, 1972, her own car was being repaired by Bauer-Zorn, Inc., a corporation engaged in selling, repairing, and servicing of motor vehicles. Haines was given a loaner to use while her car was in the custody of Bauer-Zorn for repairs. She was driving the loaner when the accident occurred.

Bauer-Zorn had a garage liability insurance policy in effect with the General Casualty Company of Wisconsin on the date of the accident.

An action was commenced by Carl L. Schoenecker and Marlene Powers against Darlene E. Haines and State Farm for injuries the plaintiffs sustained in the accident. Haines and State Farm, in turn, brought a third-party action against Bauer-Zorn and General Casualty, asserting that General Casualty was the primary insurer of the loss alleged in the plaintiffs' complaint and that State Farm Mutual Automobile Insurance Company was liable only for any possible excess not covered by the General Casualty policy. The underlying action of the plaintiffs Schoenecker and Powers has been settled, and only the liability of the two insurance companies was at issue in the trial court.

The trial court concluded that Haines's insurer, State Farm, was primarily liable and, accordingly, dismissed

the third-party complaint against Bauer-Zorn and its insurer, General Casualty. Judgment was entered, and the appeal by State Farm is from that judgment.

Although we reach the same conclusion—that the third-party complaint must be dismissed—and we therefore affirm, we reach that conclusion from the expressed intent of the provisions in both insurance policies by which each insurance company sought to preclude its own liability in the event of "other insurance."

Each of the companies prepared policies which sought to avoid liability in the event that other concurrent coverage was afforded. These "escape" clauses become relevant only after it is established that each insurer would be liable in the absence of the other policy. State Farm concedes its liability in the absence of the other policy and also asserts that General Casualty would be liable under its policy in the absence of the State Farm policy. Although General Casualty argues that its policy issued to Bauer-Zorn did not cover the loss and the underlying cause of action, that position is incorrect. It argues that its insured, Bauer-Zorn, was not legally responsible for the negligence of Haines and, therefore, the policy issued to Bauer-Zorn did not apply. That argument is, however, clearly contrary to the express language of General Casualty's policy issued to Bauer-Zorn.

The General Casualty policy covered customers of the Bauer-Zorn garage using a loaner vehicle with permission. The definition of "persons insured" under the General Casualty policy included not only the named insured, Bauer-Zorn, but also persons driving any insured vehicle with the permission of the named insured. General Casualty's policy included as insured vehicles any vehicle owned "for the purpose of garage operations" and any vehicle so owned "while furnished for the use of any person." It cannot be disputed that the loaner vehicle

given to Haines served the purpose of Bauer-Zorn's garage operations and also was furnished for the customer's use. Haines was an additional insured under General Casualty's policy.

The case of *Maziasz v. Anderson,* 45 Wis.2d 664, 173 N.W.2d 585 (1970), on which General Casualty relies to disclaim any liability, is inapplicable to the policy provisions and to the present law. The statute applicable at the time of *Maziasz* imposed no statutory requirement of coverage on garagemen for loaner vehicles and the contract of insurance in that case did not provide for such coverage.

In the instant case, however, we conclude that the plain language of General Casualty's contract expressly made Haines an additional insured while she was using the vehicle owned by Bauer-Zorn.

Because both policies provided concurrent coverage absent contract provisions relating to "other insurance," it is necessary to analyze the "other insurance" provision of each policy. Both policies seek to exonerate the insurer from liability under specified circumstances where concurrent insurance is afforded by another carrier. The State Farm policy issued to Haines, after reciting the coverages afforded, provided:

"All of the foregoing provisions and all coverages are subject to the following:
"(a) . . . .
"(b) The insurance with respect to

(i) a *temporary substitute automobile,*
(ii) a *trailer,* or
(iii) a *non-owned automobile,*

owned by any *person* or organization engaged in the *automobile business,* SHALL NOT APPLY TO ANY LIABILITY OR *LOSS* AGAINST WHICH THE *INSURED* OR THE OWNER OF SUCH VEHICLE HAS OTHER COLLECTIBLE INSURANCE APPLICABLE THERETO, IN WHOLE OR IN PART."

The General Casualty policy which was issued to Bauer-Zorn contained the following provisions with respect to "other insurance":

"In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions:

"1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.

"2. If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.

"3. If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit."

It is apparent that each of these "other insurance" clauses was designed to prevent double recovery when there was concurrent coverage as there was in this case. They were also designed to exonerate each insurance company from liability in whole or in part in light of other insurance afforded by another company's liability policy.

Because of the increasing use of automobile liability insurance, it is not unusual for more than one insurance policy to cover the loss in a particular automobile accident. To avoid double coverage and, if possible, to avoid coverage being afforded by their own policy, insurers have resorted to three general categories of "other insurance" provisions.

These categories of provisions are discussed in *Concurrent Coverage In Automobile Liability Insurance*, 65 Col. L. Rev. 319 (1965), and Billings, *The "Other Insurance" Provision of the Automobile Policy*, 1949 Insurance Law Journal 498. The writers have stated that one category of "other insurance" provisions is the "excess clause," in which the insurer's liability extends only to the amount by which the loss exceeds the coverage of all other valid and collectible insurance up to the limits of the excess policy.

Another category described is the "escape clause," which provides that there is no coverage when there is other valid and collectible insurance. In addition, there is the "pro rata clause," which provides that an insurer will pay its "pro rata" share of the loss, usually in the proportion that its policy limit bears to the total applicable limits of all insurance involved.

A careful reading of the "other insurance" provisions in the instant case reveals that the State Farm provision is a standard "escape clause," in that it provides that the coverage shall not be applicable when "the insured or the owner of such vehicle has other collectible insurance."

General Casualty's "other insurance" provision is, however, a nonstandard one. It provides that the garage customer is, by definition, not an insured "if there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit." Under those circumstances "no damages are collectible."

A fundamental principle in the interpretation and application of "other insurance" provisions is that, in circumstances where each insurer would be liable were it not for the existence of the other, the insured must be

protected by one or both of the insurers. "Other insurance" clauses cannot be permitted to operate to produce a total forfeiture of coverage. 65 Col. L. Rev., *supra* at 321; Billings, *supra* at 502.

In addition, however, the intent of each of the parties should be given effect if that is possible. *Faltersack v. Vanden Boogaard,* 39 Wis.2d 64, 68, 158 N.W.2d 322 (1968). In *Faltersack* we utilized the methodology discussed in *Government Employees Ins. Co. v. Globe Indemnity Co.,* 415 S.W.2d 581 (Ky. 1967). We said it was appropriate to examine each policy to determine whether, and to what extent, it had anticipated the existence of an "other insurance" provision in another policy and expressly contracted for exoneration from liability in that event.

An examination of "other insurance" clauses in automobile liability policies may, on some occasions, reveal them to be directly conflicting; and as this court has noted, "Any attempt to give effect to both clauses puts one on a perpetual mental merry-go-round." *Reetz v. Werch,* 8 Wis.2d 388, 392, 98 N.W.2d 924 (1959). In *Reetz* it was concluded that the clauses of the two policies were directly repugnant and the loss was then to be prorated. *See, also, Roeske v. Diefenbach,* 75 Wis.2d 253, 249 N.W.2d 555 (1977). The reason for prorating in circumstances where the clauses are directly repugnant is the primary principle to be applied in the application of "other insurance" provisions that the insured should in any event be protected.

The rule in Wisconsin, then, is that, where there are two applicable insurance policies, the provisions of each will be given effect if possible. If it is impossible to give effect to both because they are directly conflicting, then neither will be given effect and the loss will be prorated

between the concurrent insurers. Whether or not the provisions are repugnant, this court has repeatedly held that it is inappropriate to give weight to arbitrary criteria to determine which insurance policy should be primary. *Faltersack, supra* at 73; *Reetz, supra* at 392.

In the instant case it is apparent that the policies are not directly repugnant, and both can be given effect. General Casualty's escape clause is sufficient in the circumstances to exonerate it of liability in this accident, because it anticipated the possibility of "other insurance" being contingent only if no other insurance was applicable.

In the instant case, General Casualty's contract anticipated that an insurance contract such as State Farm's would contingently provide for coverage if no other insurance were available. General Casualty's contract provides that, in the event of such contingently available insurance by another company, its own insurance would not be applicable. In other words, it specifically anticipated the circumstances provided for in State Farm's policy. While State Farm's policy provided an escape clause, it nevertheless provided for a contingency in which insurance coverage would be afforded. General Casualty expressly avoids coverage where "other insurance" provides such contingent liability.

It is apparent that General Casualty has won the battle of the draftsmen. The provisions of both policies can be given effect, but General Casualty does not provide other collectible insurance under the terms by which State Farm in its contract sought exoneration for the loss. Accordingly, State Farm, which provided concurrent insurance, is solely responsible for the damages incurred by the original plaintiffs.

We could further comment that it is apparent that, by the use of these provisos, insurance companies force

courts into a game that ought not, and need not, be played. In *Reetz v. Werch, supra,* we pointed out that the clauses there put one "on a perpetual mental merry-go-round." (at 392)

Robert Billings, then an attorney for State Farm Insurance Companies, in the article cited above *supra* at 528, pointed out that the use of "other insurance" clauses by which companies seek to evade any responsibility is contrary to the interests of their insureds. He said:

"The individual policyholders who have been paying premiums for policies expect to receive value in the form of payments for damage done by or to them. They are not likely to feel kindly towards a company which denies liability simply because there is another policy in force."

Billings suggests that a prorating provision should be the standard clause to cover "other insurance" situations.

The note in the Columbia Law Review, *supra,* expresses a similar concern:

"Litigation generated by conflicting 'other insurance' clauses is largely the product of inaction on the part of the insurance industry. When it is remembered that the amount of indemnity to be paid to the insured is not in dispute, that the sole question is how to apportion the liability among the concurrent insurers, and that were it not for the purely fortuitous existence of 'other insurance' covering the same risk each insurer would be liable for the full amount of the loss up to the limits of its policy—it becomes apparent that the insurance industry should long ago have worked out informal procedures for apportioning liability in those recurring fact situations where standard 'other insurance' provisions are involved. Instead, by offering simply pro rata, excess, or no liability at all in the event of concurrent coverage, the insurers have provided only for the situation where the other applicable policies contain no provision for the contingency of 'other insurance,' and left their problems of conflicting clauses to the courts." (at 331–32)

Despite these commentaries and the clear dissatisfaction of the courts with the way insurance companies have handled the "other insurance" problem, the onerous task of reconciling these fatuous disputes continues to be forced upon the courts. As the commentaries point out, this is a waste of policyholders' money and of the court's time,[1] and is deleterious to the image of the insurance industry.

After due consideration of all the public policy problems that are posed by the continued use of "escape" clauses, the legislature may well agree with the Billings analysis that it would be beneficial to all concerned to require the prorating of liability where the facts show concurrent coverage.

In the instant case, however, given the intricacies of both policies and the effect intended by the scriveners of the contracts, General Casualty has more accurately peered into the crystal ball and has anticipated the "escape" clause utilized by State Farm and thereby has exonerated itself from liability.

*By the Court.*—Judgment affirmed.

[1] The total amount over which the companies are squabbling is $654.