Cynthia SMITH, Plaintiff-Appellant-Petitioner,

v.

ATLÁNTIC MUTUAL INSURANCE COMPANY,
Defendant-Respondent.

Supreme Court

*No. 88-1657. Argued May 29, 1990.—Decided June 25, 1990.*

(Also reported in 456 N.W.2d 597.)

For the plaintiff-appellant-petitioner there were briefs by *John A. Becker* and *Hanson, Gasiorkiewicz & Becker, S.C.,* Racine and oral argument by *John A. Becker.*

For the defendant-respondent there was a brief by *Donald H. Piper, Robert E. Neville* and *Fellows, Piper and Schmidt,* Milwaukee and oral argument by *Donald H. Piper.*

Amicus curiae brief was filed by *Mark L. Thomsen* and *Cannon & Dunphy, S.C.,* Milwaukee for the Wisconsin Academy of Trial Lawyers.

WILLIAM A. BABLITCH, J. Cynthia Smith (Smith) seeks review of a court of appeals' decision which affirmed a circuit court judgment dismissing her case against Atlantic Mutual Insurance Company (Atlantic Mutual). In her lawsuit, she claimed entitlement to underinsured motorist (UIM) benefits. The issue is whether the other vehicle involved in the accident was an "underinsured motor vehicle" as defined in Smith's policy.

We conclude that the other vehicle involved in the accident was not an "underinsured motor vehicle" as unambiguously defined in the policy, and therefore Smith was not entitled to UIM coverage.

The facts are as follows: Smith was involved in an accident with Joyce Goulias (Goulias). Goulias carried liability insurance with American Family Insurance Company (American Family) that had a $50,000 policy

limit. Smith had $50,000 of underinsured motorist coverage with Atlantic Mutual. Damages are alleged to be in excess of $100,000.

American Family tendered to Smith its policy limits of $50,000, and Smith then made a claim against her company Atlantic Mutual for the limits of her UIM policy. Atlantic Mutual denied coverage, and Smith commenced the present suit. Atlantic Mutual successfully moved for summary judgment and the action was dismissed. The circuit court held that the Goulias vehicle was not an underinsured motor vehicle as defined by the policy.

The court of appeals affirmed the circuit court judgment. However, the court did not address the issue whether the Goulias vehicle was an underinsured motor vehicle under the policy language. The court of appeals based its decision on the grounds that even if Smith were entitled to UIM benefits, the claim would be reduced by $50,000 pursuant to the policy's reducing clause. Such a reduction would result in Smith's claim being reduced to zero.

We accepted review to resolve the issues whether Goulias' vehicle was an "underinsured motor vehicle" under Smith's policy, and if so, to what extent the reducing clause affects the claim. The resolution of these issues involves the interpretation of language within an automobile liability policy. The interpretation of an insurance policy is a question of law which this court decides independently of the lower courts. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987).

Insurance contracts are controlled by the same rules of construction as are applied to other contracts. *Ehlers v. Colonial Penn. Ins. Co.,* 81 Wis. 2d 64, 74, 259 N.W.2d

718 (1977). Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer. *Davison v. Wilson,* 71 Wis. 2d 630, 635–36, 239 N.W.2d 38 (1976). Words or phrases are ambiguous when they are susceptible to more than one reasonable construction. However, when the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction. *Limpert v. Smith,* 56 Wis. 2d 632, 640, 203 N.W.2d 29 (1973).

We conclude that the Goulias vehicle was not an underinsured motor vehicle as defined in the policy. The Atlantic Mutual policy defines an "underinsured motor vehicle" as:

> A land motor vehicle . . . to which a bodily injury liability bond or policy applies at the time of the accident *but its limit for bodily injury liability is less than the limit of liability for this coverage.* (Emphasis added.)

■

We agree with the circuit court that the above policy terms regarding UIM coverage are unambiguous. Applying the plain meaning of the words, Smith does not fit the definition of an underinsured motorist which would trigger coverage under the policy. Coverage under this provision only applies when the owner or driver of the other vehicle maintains a policy with a lower coverage than the insured. Here, Goulias' liability limits of $50,000 were the same as, and not less than, the $50,000 limits of Smith's UIM coverage. Accordingly, under the clear terms of the policy, Goulias' vehicle is not an underinsured motor vehicle, and Atlantic Mutual need not provide coverage.

This conclusion is in accord with *Paape v. Northern Assur. Co.,* 142 Wis. 2d 45, 51, 416 N.W.2d 665 (Ct. App.

1987). In that case, the plaintiff sustained bodily injury as a result of an accident. The tortfeasor's auto liability carrier, American Family Insurance Company, agreed to pay plaintiffs its policy limit of $25,000. The plaintiff subsequently made an underinsurance claim against his liability carrier, Northern Assurance Company of America. Northern's policy contained underinsurance coverage in the amount of $15,000. Northern denied the plaintiff's underinsurance claim, maintaining among other things that the tortfeasor's vehicle was not an underinsured vehicle as defined under the Northern policy. As in the present case, the Northern policy defined an "underinsured motor vehicle" as a " 'land motor vehicle . . . to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.' " *Id.* at 48.

The court of appeals affirmed the circuit court's summary judgment in favor of Northern, holding that the insurance company had no contractual duty to pay under its policy. The court stated, at 51–52:

> We conclude that Northern's policy terms concerning the extent of liability under underinsurance motorist coverage are not ambiguous. The policy clearly states that an underinsured motor vehicle is one to which a liability policy applies but its limit is less than that of Northern's. Because Cullen's policy provided for $25,000 in liability coverage, and Paape's coverage was for $15,000, Cullen's vehicle was not underinsured as defined by the policy.

The identical issue was also presented in *Grabski v. Finn*, 630 F. Supp. 1037 (E.D. Wis. 1986). There, the plaintiff was seriously injured in an automobile accident. When the defendant's auto insurance carrier agreed to pay the plaintiff its policy limits of $50,000, the plaintiff

made a claim for the policy limits of her own auto policy's underinsured motorist coverage. That coverage similarly defined an "underinsured" as one who possesses a bodily injury liability bond or policy whose "limits of liability are less than those shown in the Declarations for [Auto Owners] coverage." *Id.* at 1045.

The court in *Grabski* determined that since the tortfeasor had policy limits in excess of the limits of Auto-Owners' underinsured motorist coverage, the tortfeasor did not meet Auto-Owners' policy definition of "underinsured." Therefore, Auto-Owners had no duty to provide underinsured motorist coverage to its insured. *Id.* at 1047.

In the present case, as in *Paape* and *Grabski,* another insurance policy (i.e., American Family) provided an amount not less than the limits of Atlantic Mutual's underinsurance motorist coverage. Thus, under the unambiguous terms of the policy, Atlantic Mutual need not provide additional coverage since Goulias' vehicle does not fit the definition of an "underinsured motor vehicle," nor are the terms of the UIM coverage otherwise prohibited by statute. It was therefore proper for the circuit court to grant summary judgment on this basis.

Smith concedes in her brief that "[t]here is no question that Joyce Goulias (sic) vehicle was not an underinsured motor vehicle under the strict definition in the policy." Nevertheless, Smith insists that the definition of underinsured motor vehicle cannot be strictly construed. According to Smith, "[t]o do so would render the policy illusory and the defendant would be committing a fraud upon the plaintiff." We are unpersuaded.

First, Smith raises certain hypothetical situations which she alleges would result in the enforcement of illusory contracts and inequitable results. However, as

the court of appeals correctly observed, these hypothetical facts are not before the court. We do not reach decisions based on hypothetical facts. *State v. Hartnek,* 146 Wis. 2d 188, 196, 430 N.W.2d 361 (Ct. App. 1988).

We are also unpersuaded that coverage is compelled by our recent decisions in *Kaun v. Industrial Fire and Cas.,* 148 Wis. 2d 662, 436 N.W.2d 321 (1989), and *Wood v. American Fam. Mut. Ins.,* 148 Wis. 2d 639, 436 N.W.2d 594 (1989). Significantly, no issue was raised in *Wood* or *Kaun* regarding the definition of underinsured motor vehicle. In those cases, the phrase "amounts payable" was found to be ambiguous in the context of the policy's reducing clause. The insurance companies argued that the phrase referred to the amount of underinsurance benefits payable; however, the court concluded that a reasonable person in the position of an insured would have construed "amounts payable" to be the equivalent of damages compensable. *Wood,* 148 Wis. 2d at 652-54; *Kaun,* 148 Wis. 2d at 669-70. Therefore, the underinsurance policies in those cases were considered to provide coverage "for that margin between the amount received by the [plaintiff] from the underinsured driver's liability policy and the actual damages suffered by the [plaintiff]." *Wood,* 148 Wis. 2d at 654; *Kaun,* 148 Wis. 2d at 670.

In the present case, because we conclude in the first instance that the other vehicle is not an "underinsured motor vehicle" as unambiguously defined in the policy, we need not reach the issue regarding to what extent the policy's reducing clause may affect the claim.[1] Accord-

---

[1] However, we note that Smith's policy does not involve the ambiguous phrase "amounts payable." Rather, the policy states that it is the "limit of liability" that is reduced. The limit of liability for each person under Smith's policy is $50,000.

ingly, *Wood* and *Kaun* are not controlling. Summary judgment was properly granted to Atlantic Mutual.

*By the Court.*—The decision of the court of appeals is affirmed.