Sean OELHAFEN, Thomas Kuck and Mary Kuck, Plaintiffs,

v.

TOWER INSURANCE COMPANY, Transamerica Insurance Company, and Commercial Union Insurance Company, Defendants-Joint-Appellants,†

BOSTON OLD COLONY INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 92-0462. Submitted on briefs July 21, 1992.—Decided September 2, 1992.*

(Also reported in — N.W.2d —.)

† Petition to review denied.

On behalf of the defendants-joint-appellants, the cause was submitted on the briefs of *William J. Ewald* of *Denissen, Kranzush, Mahoney & Ewald, S.C.* of Green Bay; *John M. Swietlik* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee; and *John M. Thompson* of *Everson, Whitney, Everson & Brehm, S.C.* of Green Bay.

On behalf of defendant-respondent, the cause was submitted on the brief of *Ronald P. Huntley* of *Ronald P. Huntley & Associates* of Brown Deer.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J. Tower Insurance Company (Tower), Transamerica Insurance Company (Transamerica) and Commercial Union Insurance Company (Commercial) appeal from a judgment ordering a $925,000 settlement to be paid $300,000 by Tower, $100,000 by Transamerica, $100,000 by Commercial and $425,000 by Boston Old Colony Insurance Company (BOC). The amounts paid by Tower, Transamerica and Commercial are equal to the maximum liabilities under their respective policies. Tower, Transamerica and Commercial (appellants) argue that BOC contracted to be liable for all sums above $300,000 by the terms of its umbrella policy. Because we conclude that BOC's policy is a true umbrella policy for which BOC is liable for only any excess liability not paid by other insurers, we affirm.

The plaintiffs commenced this action against Richard and Carol Dahnke to recover for personal injuries caused when the Dahnkes' boat, operated by Abraham

534

Vallejo and Charles Imig, Jr., struck Sean Oelhafen. The defendants were covered by insurance policies issued as follows: Tower and BOC to the Dahnkes, Transamerica to Vallejo, and Commercial to Imig. In the course of the proceedings, the plaintiffs settled their claims with all of the defendants for $925,000. Language in the settlement agreement expressly reserved the right to have a judicial determination of the obligations owed by each insurance company. The only issue on appeal is whether the trial court properly apportioned these obligations.

■

The interpretation of insurance contracts presents a question of law. *Keane v. Auto-Owners Ins. Co.,* 159 Wis. 2d 539, 547, 464 N.W.2d 830, 833 (1991). We review questions of law without deference to the trial court. *See id.*

Each of the insurance policies contain an "other insurance" clause. These clauses attempt to limit the insurer's liability to the insured in the event that other insurance policies also provide coverage. The clauses within the Transamerica and Commercial homeowner's policies are identical and read as follows:

> **Other Insurance—Coverage E—Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

The limits for both the Transamerica and Commercial policies were $100,000.

Tower's watercraft liability policy reads as follows:

> **Other Insurance.** If at the time of loss or damage there is available any other insurance which would apply in the absence of this policy, the insurance

under this policy shall apply only as excess insurance over other insurance.

The limit for Tower's policy was $300,000.

BOC's homeowner's policy's "other insurance" clause is slightly different from the other three:

> **Other Insurance.** Our coverage is excess over any other insurance. This applies whether the other insurance is primary, contributing, excess or contingent. If the other insurance provides coverage only in excess of a stated amount of liability for each accident, we shall pay that part of the Net Loss covered by this. policy. In such cases we will pay only our share. Our share is the proportion that our Limit of Coverage bears to the total of all limits of all other excess indemnity policies applicable to the loss.

BOC's policy was an umbrella policy, which provided coverage only in the event that the insured (the Dahnkes) obtained a primary underlying policy of at least $300,000 for watercraft liability. BOC then would provide additional coverage for losses up to $2,000,000. The primary policy which the Dahnkes obtained was the Tower policy.

All parties agree that the "other insurance" clauses of Transamerica, Commercial and Tower are directly repugnant to each other. No single clause could be given effect without violating the terms of the other two contracts. The rule in Wisconsin is that when insurance contract clauses are directly conflicting and cannot be read to give effect to each of the contracts involved, none of the clauses will be given effect. *Schoenecker v. Haines,* 88 Wis. 2d 665, 672, 277 N.W.2d 782, 785 (1979). Therefore, neither insurer is given priority over the other and each contributes toward the loss pro rata. *See id.* at

672–73, 277 N.W.2d at 785. The proportion usually is based on their respective policy limits. *Id.* at 671, 277 N.W.2d at 785.

The appellants argue that although their policies are primary policies and BOC's policy is a true excess or umbrella policy, BOC specifically contracted to indemnify any loss over $300,000 regardless of how many policies contributed to the first $300,000. Appellants also point out that BOC's policy did not require that the limits of any underlying policies be exhausted before BOC would indemnify. Implicitly, appellants wish us to consider BOC's policy to be the primary policy for all amounts above $300,000.

In support of their argument, appellants rely on *Reetz v. Werch,* 8 Wis. 2d 388, 98 N.W.2d 924 (1959), and *Faltersack v. Vanden Boogaard,* 39 Wis. 2d 64, 158 N.W.2d 322 (1968). They read these cases to state a "rule" that in Wisconsin

> the court examines the language of the policy, and pays no attention to any other criteria for granting effect to the "excess" other insurance clause of one policy and not the other, including the fact that the policies may be of a different type or the named insureds may be differently related to the activities which allegedly give rise to the liability.

Applying that "rule" in the present situation, appellants argue that the umbrella language distinction in a policy is one of form and not substance in Wisconsin; therefore, by examining the language within the policy, BOC has limited its liability only to the first $300,000 and has assumed liability for the remainder up to its policy limits.

Appellants' reliance on *Reetz* and *Faltersack* is misplaced. Both *Reetz* and *Faltersack* involved the priority

537

between two primary insurers, while in this case the appellants concede that BOC is a true "excess" or umbrella insurer and appellants are primary insurers. In *Reetz* and *Faltersack* the court's concern was that, as between two primary policies, of which either would apply in the absence of the other, it would be completely arbitrary to rely upon one or two criteria to designate one policy as primary and one policy as secondary. That concern is not present when comparing priority between a primary insurer and an umbrella insurer. In the latter situation it is not arbitrary to examine the overall pattern of insurance and to construe each policy as a whole. The umbrella policy is not effective in the absence of other primary insurance. The umbrella policy specifically contemplates and, in fact, *requires* this other insurance. The umbrella policy is never liable for the first $300,000 of loss. Therefore, it is not arbitrary to conclude that the terms of BOC's policy require it to be secondary to all other insurance.

Underlying policy considerations and the general expectations of the parties as to the extent of coverage also are contrary to appellants' arguments. When possible, the intent of each of the parties should be given effect when construing insurance contracts. *Schoenecker,* 88 Wis. 2d at 672, 277 N.W.2d at 785. In contrast to a primary policy with an "other insurance" clause, an umbrella policy provides unique and special coverage:

> One very important type of coverage in these days of potentially high verdicts is that provided by so-called umbrella or catastrophe policies . . .. [This coverage] gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any

substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire.

. . ..

The courts are not ignorant of [these] desirable socio-economic consequences attendant upon the providing of umbrella or catastrophe coverages.[1]

8A J.A. APPLEMAN & J. APPLEMAN, INSURANCE LAW & PRACTICE, sec. 4909.85, at 452–53 (rev. ed. 1981). Umbrella carriers are not primary insurers that attempt to limit a portion of their risk by describing it as "excess." Umbrella policies also are not devices for an insurer to escape responsibility. These policies therefore are regarded as true excess over and above any type of primary coverage, including excess provisions arising in regular primary policies. *Id.*, sec. 4909.85, at 453–54.

██

We also note that the intent of umbrella policies to serve a different function from primary policies with excess clauses is reflected in the rate structure of the two types of policies. In general, umbrella policy premiums are relatively small in relation to the amount of risk "so that the company cannot be expected to prorate with other excess coverages; and public policy should not demand that this be done." *Id.*, sec. 4906, at 348. Here, appellants argue that BOC's umbrella policy goes even a step beyond proration to full responsibility for all losses over $300,000. This is a step we are not willing to take.

---

[1]Appleman notes that some umbrella policies provide primary coverage in certain areas. 8A J.A. APPLEMAN & J. APPLEMAN, INSURANCE LAW & PRACTICE, sec. 4909.85, at 452–53 (rev. ed. 1981). It is not argued and a review of the BOC policy does not reveal that the policy provides any primary coverage for the accident in this case.

In the alternative, appellants argue that for amounts above $300,000, the policies all apply; as such, their "other insurance" clauses are mutually repugnant so that the remaining $625,000 of liability should be shared pro rata among all four insurers. This argument is also unavailing. The "other insurance" clauses of a primary policy with an excess clause and an umbrella policy are not equivalent and are not mutually repugnant so that they cancel out each other. The umbrella and primary policies are not of the same character and they do not supply coverage at the same level.

Furthermore, an application of *Schoenecker* to the insurance clauses also persuades us to give effect to the "other insurance" clause in BOC's umbrella policy. *Schoenecker* involved two primary insurance policies with "other insurance" clauses. One policy contained an "escape clause" which states the coverage is not applicable when the insured has other collectible insurance. The second policy contained an "other insurance" clause which states no damages are collectible if there is other valid and collectible insurance, whether primary, excess or *contingent. Schoenecker,* 88 Wis. 2d at 671, 277 N.W.2d at 785.

The Wisconsin Supreme Court noted that the "escape clause" of the first policy was the type of contingency the second policy was meant to address. *Id.* at 673, 277 N.W.2d at 786. The court held that the second insurer won the "battle of the draftsmen" because it "specifically anticipated the circumstances provided for in [the first insurer's] policy." *Id.*

BOC's policy explicitly states it is excess to all "primary" and "excess" policies. Like the second insurer in *Schoenecker,* BOC specifically anticipated the circumstances provided for in the policies of Tower, Transamerica and Commercial. Tower, Transamerica and

Commercial provided only that they were excess to "other insurance" and were not specific as to what other types of policies to which they were excess.

██

Tower's argument is even weaker than those of Transamerica and Commercial for being excess to the BOC policy based on the language in the Tower policy. The Tower policy was the primary underlying insurance *required* by BOC's umbrella policy. BOC's policy does not provide coverage if this primary coverage is not obtained. Tower's "other insurance" clause states it is excess only to "any other insurance which would apply in the absence of [Tower's] policy." If Tower's policy were absent, BOC's policy would be unenforceable by its terms. Thus, the BOC policy is not "any other insurance which would apply in the absence of [Tower's] policy" and Tower remains a primary insurer.

For these reasons we conclude that the trial court properly allocated the liabilities of Tower, Transamerica, Commercial and BOC.

*By the Court.*—Judgment affirmed.