Terri ENGSTROM, Allan Engstrom, and Carolyn Engstrom, Plaintiffs-Appellants,

v.

MSI INSURANCE COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 95–1415–FT. Submitted on briefs September 13, 1995.—Decided November 21, 1995.*

(Also reported in 542 N.W.2d 481.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Ardell W. Skow* and

*Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Theodore A. Franti* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    Terri, Allan and Carolyn Engstrom appeal a summary judgment in favor of MSI Insurance Company that dismissed their claim for underinsured motorist (UIM) benefits because the trial court concluded the vehicle that injured Terri was not an underinsured vehicle under the definition provided in the Engstroms' insurance policy.[1] Because we conclude that the motor vehicle that injured Terri was underinsured with respect to one of the two liability policies covering it, we reverse the summary judgment and remand the case for further proceedings.

Terri was injured when the automobile she was driving was struck by an automobile driven by John Jeffrey. Terri and her parents sued Jeffrey and his insurer, Milwaukee Mutual Insurance Company, alleging negligence on Jeffrey's part. Jeffrey was driving his father's car at the time of the accident, which was covered by a Milwaukee Mutual policy with a $100,000 liability limit. A second Milwaukee Mutual policy had a liability limit of $25,000 and covered Jeffrey as the named insured on his own vehicle, which was not involved in the accident. The Engstroms ultimately settled their claims with Jeffrey and Milwaukee Mutual for the full amounts of the two liability policies, and those defendants were dismissed from the suit.

---

[1] This is an expedited appeal under RULE 809.17, STATS.

The Engstroms in an amended complaint sued their insurance carrier, MSI, alleging they were entitled to UIM benefits under their policy. MSI moved for summary judgment, arguing that Jeffrey's automobile was not an underinsured motor vehicle. The trial court granted MSI's motion, and the Engstroms now appeal.

The sole issue before this court is whether Jeffrey's vehicle was an underinsured motor vehicle under the definition provided in MSI's insurance policy. The interpretation of words or clauses in an insurance contract is a question of law this court decides independently of the trial court's decision. *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). This construction is controlled by the same rules of construction as are applied to contracts generally. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). "[T]he test is . . . what a reasonable person in the position of the insured would have understood the words to mean." *Id.*

The Engstroms' insurance policy provided in relevant part:

> Underinsured motor vehicle means a land motor vehicle or trailer to which a bodily injury liability bond or policy applies at the time of the accident but the limits of that bond or policy are:
>
> 1.   Less than the limit of liability for this coverage
> . . . .

The Engstroms argue that Jeffrey's vehicle meets this definition because he had an applicable $25,000 liability insurance policy. They explain: "[A] liability policy that had limits of less than $50,000 applied to the Jeffrey vehicle. The fact that a different $100,000

liability insurance policy also applied, while relevant to the operation of the reducing clause, does not take the vehicle out from under the underinsured motor vehicle definition."

MSI points out that Jeffrey had liability coverage of $100,000 plus $25,000, equaling a total of $125,000, while the Engstroms had $50,000 in UIM coverage. MSI argues that because the total liability coverage was more than UIM coverage, "Jeffrey as a matter of definition and [as] a matter of law is not an underinsured motorist." MSI also argues that when comparing the amount of liability coverage to the amount of UIM coverage, this court should examine the $100,000 policy that insured the vehicle Jeffrey was driving, rather than the $25,000 policy which insured Jeffrey's vehicle parked at home, because the $100,000 was "primary" and the $25,000 policy was "excess." MSI explains:

> This status of the primary versus excess coverages was the subject [of] a request for admissions (which plaintiffs admitted) and has never been disputed. As a result, the court is comparing the $50,000.00 UIM coverage on the MSI policy against the primary $100,000.00 of liability coverage or the $50,000.00 UIM policy versus the excess coverage (the first dollar in excess of $100,000.00 through $125,000.00).

We begin our analysis by examining the insurance policy's definition of an underinsured motor vehicle. According to the policy, an underinsured motor vehicle is "a land motor vehicle . . . to which *a* bodily injury liability *bond or policy* applies at the time of the accident but the limits of *that bond or policy*" are less than the limit of liability for underinsured motor vehicle coverage. (Emphasis added.) In *Smith*, 155 Wis. 2d at

811, 456 N.W.2d at 599, our supreme court examined a definition that was virtually identical to the Engstroms' policy definition and concluded that the policy terms regarding UIM insurance were unambiguous.[2] The court concluded that coverage under the UIM provision only applies when the owner or driver of the other vehicle maintains a policy with a lower coverage than the insured. *Id.*[3]

Just as our supreme court concluded the policy in *Smith* was unambiguous, we conclude that the Engstroms' policy is unambiguous. When the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction. *Limpert v. Smith*, 56 Wis. 2d 632, 640, 203 N.W.2d 29, 33 (1973). The definition's plain meaning is that the UIM coverage applies when the owner or driver of the other vehicle maintains a policy with a lower coverage than the insured. Applying this language to the instant case, the Engstroms can recover only if the car's owner, Jeffrey's father, or the car's driver, Jeffrey, maintained a policy with a lower coverage than the Engstroms' UIM cover-

---

[2] In *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 599 (1990), the policy at issue defined an underinsured motor vehicle as "a land motor vehicle . . . to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." (Emphasis omitted.)

[3] In *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990), the tortfeasor had a single liability policy, so our supreme court did not face the situation presented here, where there are two applicable liability policies for one tortfeasor. However, *Smith* is instructive because the Engstroms' policy, like the policy in *Smith*, defined an underinsured motor vehicle as one to which *a* policy with limits lower than the insured's UIM coverage applies.

age. Because Jeffrey had a liability policy for $25,000, which provides a lower coverage than the Engstroms' $50,000 UIM coverage, the definition applies and Jeffrey is an underinsured motorist.

■

MSI argues that the $25,000 policy should not be considered individually because it was excess coverage, rather than primary coverage. While there are reasons to differentiate primary and excess coverage when there is a dispute over which policy should contribute the first dollar of coverage, there is no such dispute in this case. Milwaukee Mutual has paid both policies in full. Moreover, while MSI argues that under *Smith* the distinction between primary and excess coverage is relevant, we read the *Smith* case as silent on the issue; *Smith* involved a single liability policy and does not even mention primary or excess policies. Finally, the underinsured motorist definition that controls MSI's policy with the Engstroms does not address primary or excess coverage. For these reasons, we reject MSI's argument and conclude it is appropriate to examine the liability policies individually to determine whether Jeffrey's vehicle was underinsured.

■

We recognize the result of our decision is that although the Engstroms could not have collected UIM benefits if there had been only a single $100,000 liability policy, they are eligible to collect benefits because there was another applicable policy with a liability limit of $25,000. This result is required by the language of the policy; we have determined what a reasonable person in the position of the insured would have understood the words to mean. *See Kremers-Urban*, 119 Wis. 2d at 735, 351 N.W.2d at 163. A reasonable insured reading the policy would have understood that he or

she could recover if the owner or driver of the other vehicle maintained a policy with a lower coverage than the insured. A reasonable person would compare $50,000 in UIM coverage with the $25,000 liability policy and conclude the other vehicle was underinsured. One way to avoid this conclusion is to add the liability policies together before comparing them to the UIM coverage. The language of the policy, however, neither compels nor permits this procedure.[4]

■

While MSI in retrospect may wish it had drafted its definition in a way that compared the aggregate of all the liability policies available to the tortfeasor against the insured's UIM coverage, it did not do so.[5]

---

[4] This is not the first time this court has reviewed attempts to aggregate policies before determining whether a motor vehicle is underinsured. In *Krech v. Hanson*, 164 Wis. 2d 170, 473 N.W.2d 600 (Ct. App. 1991), the tortfeasor had a liability policy with a $100,000 limit and the injured insured was covered by two UIM policies, each for $100,000. *Id.* at 175-76, 473 N.W.2d at 603. The definition of underinsured motor vehicle was virtually identical to the policy at issue in this case and the policy our supreme court examined in *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990). *Krech,* 164 Wis. 2d at 174, 473 N.W.2d at 602. The insured sought to aggregate the two UIM policies and then compare the total amount of coverage against the $100,000 liability policy, which would make the tortfeasor's car an underinsured motor vehicle under the policy, since $100,000 is less than $200,000. *Id.* at 175-76, 473 N.W.2d at 603. We rejected this approach, holding that each $100,000 UIM policy must be compared individually with the $100,000 liability policy. *Id.*

[5] In contrast, other jurisdictions have created definitions by statute that aggregate all of the tortfeasor's liability policies before comparing the liability coverage to the UIM coverage. For example, New Mexico defines an underinsured motorist as

MSI is bound by the contract language it drafted. Therefore, we conclude that Jeffrey's vehicle was an underinsured motor vehicle as defined by the Engstroms' policy.

■

The Engstroms urge us to determine that because Jeffrey's vehicle meets the definition of an underinsured motor vehicle, they are entitled to the full $50,000 in UIM benefits because the reducing clause in the Engstroms' policy is invalid. We agree with MSI that the issue of the applicability of the reducing clause is not before this court because the trial court did not address the issue. Instead, the trial court properly began by determining whether coverage existed. *See Matthiesen v. Continental Cas. Co.* , 193 Wis. 2d 192, 202-03, 532 N.W.2d 729, 733 (1995) (prior to deciding whether a reducing clause is valid, a court must determine whether coverage exists at all based on the definition of coverage). Once the trial court determined there was no UIM coverage available, there was no need to examine the reducing clause. Because we have concluded there is UIM coverage, we reverse the summary judgment and remand the case to the trial court to determine the validity of the reducing clause, as well

---

"an operator of a motor vehicle with respect to the ownership, maintenance or use of which the *sum of the limits of liability under all bodily injury liability insurance applicable* at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." N.M. STAT. ANN. § 66-5-301(B) (Michie 1995) (emphasis added); *see also* N.C. GEN. STAT. § 20-279.21(b)(4) (Michie 1994) (requires examination of the "sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident").

as to examine other undetermined issues, such as liability and damages.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.