Douglas E. DAVIS, Plaintiff-Respondent,

INTEGRITY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

ALLIED PROCESSORS, INC., Defendant-Respondent,†

WESTERN NATIONAL MUTUAL INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 97–0478. Submitted on briefs July 21, 1997.—Decided
October 21, 1997.*

(Also reported in 571 N.W.2d 692.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John E. Varpness* of *Gislason, Martin & Varpness, P.A.* of Edina, MN.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael P. Wagner* of *Wagner & Todryk, S.C.* of Menomonie.

On behalf of defendant-respondent, the cause was submitted on the brief of *Chris A. Gramstrup* of Superior.

Before Cane, P.J., Myse and Nolan, JJ.[1]

NOLAN, J. Western National Mutual Insurance Company appeals an order that permits the punitive damage award to be satisfied from its underlying (primary) policy of insurance and allows the compensatory damages award to be satisfied from its excess (umbrella) policy. Western contends that the trial court erroneously permitted the plaintiff, Douglas Davis, to elect which policy would be used to satisfy the judgment for both punitive and compensatory damages. It

---

[1] Circuit Judge J. Michael Nolan is sitting by special assignment pursuant to the Judicial Exchange Program.

contends that the compensatory damages must first be satisfied from the underlying policy, which provided primary coverage and, because the excess policy contained a provision excluding coverage for punitive damages, the punitive damages could not be satisfied from it.

Contrary to the trial court's determination, we find no ambiguity in the excess policy's terms. Because the trial court forced Western to assume a risk it had not contracted for, we reverse the order and remand for further proceedings consistent with this opinion.

After a jury trial for personal injuries, the jury awarded Davis $585,000 in compensatory damages. It found Western's insured, Allied Processors, Inc., 90% at fault and Davis 10% at fault. The jury also awarded $500,000 in punitive damages against Allied.

Western had issued Allied two liability policies. The first provided primary coverage for liability in the amount of $500,000. A second excess or umbrella policy provided $2,000,000 in coverage.[2] Because the underlying policy was silent on the subject of punitive

---

[2] The umbrella's insuring agreement states:

I. COVERAGE
 To indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated which the insured may sustain by reason of liability imposed upon the insured by law or assumed by the named insured under contract.

The policy definition of retained limit includes the total of the applicable limits of the underlying insurance. As a condition, the umbrella policy states:

G. LOSS PAYABLE:

The liability of the Company with respect to any one occurrence shall not attach unless and until the insured, the Company on behalf of the insured, or the insured's underlying insurer, has paid the amount of retained limit.

damages, in accordance with the Wisconsin Supreme Court's decision in *Brown v. Maxey*, 124 Wis. 2d 426, 369 N.W.2d 677 (1985), it permitted the payment of both compensatory and punitive damages. This conclusion is not disputed. In contrast, the umbrella policy contained a punitive damage exclusion, stating: "It is agreed that this policy shall not apply to any liability for punitive or exemplary damages."

After the verdict, Davis requested the trial court to find that, as a matter of the law, the two policies covered the entire judgment. The trial court, finding that there is no language in the umbrella policy that makes an exception when underlying insurance is exhausted by a punitive damage claim, ordered that Western "shall satisfy the punitive damage portion of Plaintiff Davis's judgment from the primary policy . . . and shall satisfy the compensatory damage portion of the judgment out of the coverage afforded by the excess/umbrella policy . . . ."

The trial court found that Western had included an endorsement excluding punitive damages in the excess policy but did not do so in the underlying policy when it presumably could have. The trial court also found that a reasonable insured would expect the excess policy to pay compensatory damages when the aggregate limits of the underlying policy had been exhausted as a result of an accident or occurrence for which coverage was provided. The trial court concluded that the definition of "ultimate net loss" in the umbrella policy does not exclude payment of compensatory damages where the underlying insurance is exhausted by payment of a punitive damage claim. It also found that the policy's definition of "ultimate net loss" is not determinative "because contradictory provisions of the same policy . . . apply where the underlying

insurance is exhausted by virtue of an occurrence or accident."

The precise issue before us has not yet been addressed in this state, and the parties have not been able to provide us with any case on all fours from another jurisdiction. We resolve the issue by resorting to well-known principles of contract construction.

The interpretation of an insurance contract presents a question of law we review de novo. *Oaks v. American Family Mut. Ins. Co.,* 195 Wis. 2d 42, 47, 535 N.W.2d 120, 122 (Ct. App. 1995). Insurance policies are construed like other contracts. *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 536, 514 N.W.2d 1, 6 (1994). The objective is to ascertain and carry out the intentions of the parties. *Id.* The test is what a reasonable person in the position of the insured would have understood the words to mean. *Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414, 417 (1975). Whether an ambiguity exists is a question of law. *Brown,* 124 Wis. 2d at 442, 369 N.W.2d at 686. Absent an ambiguity, the plain language of the contract controls. *Id.* It is our task to "examine the overall pattern of insurance and to construe each policy as a whole." *Oelhafen v. Tower Ins. Co.,* 171 Wis. 2d 532, 538, 492 N.W.2d 321, 323 (Ct. App. 1992).

Western contends that because its punitive damage exclusion in the umbrella policy states that the policy "shall not apply" to liability for punitive damages, the policy definition of the term "ultimate net loss" prohibits the umbrella policy from covering where the underlying policy is exhausted by the payment of punitive damages. We disagree with Western's interpretation. The policy states that the term

> "Ultimate net loss" means the total of the following sums with respect to each occurrence:
>
> (1) all sums which the insured, or any company as its insurer, or both, is legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury, property damage or advertising liability *to which this Policy applies* . . . . (Emphasis added.)

Western argues that the term "to which this Policy applies" as used in this definition modifies the term "damages" and should be read as stating that ultimate net loss means damages to which this policy applies. It therefore argues that because the punitive damages exclusion clause says that the policy "shall not apply" to liability for punitive damages, it will not apply where a primary policy has been exhausted by the payment of punitive rather than compensatory damages.

We do not agree with this conclusion. We conclude that the term "to which this Policy applies" modifies not the word "damages," but the phrases "personal injury, property damage or advertising liability." Under the "coverage" clause, the policy covers liability for personal injury, property damage and advertising. However, under the "exclusions" clause, it does not apply to certain kinds of such liability or damage such as that imposed by worker's compensation or unemployment law, damage to property owned by or rented to the insured and other damages specifically excluded. We read the phrase as stating that the policy will only pay for the types of liability or loss not excluded by the exclusions clauses. Accordingly, we reject Western's position on this point.

Nonetheless, we agree with Western's position regarding the type of coverage that was bargained for. The parties all agree that Western provided an

umbrella policy that provides excess coverage. The intent of umbrella policies, to serve a different function from primary policies, is reflected in their rate structures. *Oelhafen*, 171 Wis. 2d at 539, 492 N.W.2d at 324. There is no dispute that the overall pattern and purpose of the umbrella policy is that of an excess carrier. As is shown by the affidavit of Paul Giguere, dated December 27, 1996, the premium paid by the insured for the underlying liability coverage of $500,000 was substantially more than the premium paid for the umbrella policy, which provided four times as much coverage. As stated in the affidavit, an umbrella policy provides special coverage normally not applicable except in the case of a "catastrophic" loss. Therefore, the premium charged for such a policy is substantially lower than for a primary policy.

This stands to reason. Insurance companies charge premiums based upon statistics. Undoubtedly, Western's conclusions were that it was far more likely that payment would be required for compensatory damages under the underlying policy than would be required for a compensatory loss of over $500,000 through the umbrella policy. Because the risk was diminished for the umbrella policy, it could and did charge a smaller premium.

This is especially so in light of the exclusion of punitive damages coverage in the umbrella policy. Western was thereby assessing risk and charging a premium based upon compensatory damages statistics in issuing the umbrella policy. Concomitantly this is what the insured was both bargaining and paying for.

"In general, umbrella policy premiums are relatively small in relation to the amount of risk . . . ." *Id.* It is axiomatic that courts should not, in construing insurance contracts, rewrite the contract to bind the

insurer to a risk "which it did not contemplate and for which it was not paid, unless the terms are ambiguous or obscure." *Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621, 624 (1992).

We conclude that no ambiguities exist in the contract. While express contract language did not specifically prohibit the trial court from ordering what it did, its order, in effect, rewrote the agreement that had been made between the insured and the insurer. It required Western to accept a risk it did not contemplate and for which it was not paid.

We conclude that the primary coverage should first be exhausted by compensatory rather than punitive damages. While not of great weight, Wisconsin courts have continuously ruled that there can be no recovery of punitive damages unless there are recoverable compensatory damages. In other words, compensatory damages have always been the underlying linch-pin for the recovery of punitive damages. *Tucker v. Marcus,* 142 Wis. 2d 425, 449, 418 N.W.2d 818, 827 (1988). Requiring the compensatory damages to be paid first is in keeping with this view of this relationship. Therefore, we reverse the order and remand with directions that the trial court order the compensatory damages be paid first by the primary policy.

*By the Court.*—Order reversed and cause remanded with directions.