Scott R. MEYER, Plaintiff-Respondent,

v.

MICHIGAN MUTUAL INSURANCE CO., Defendant,

MILLERS CLASSIFIED INSURANCE CO., Defendant-
Appellant.†

Court of Appeals

*No. 99–0228. Submitted on briefs December 6, 1999.—Decided January 26, 2000.*

## 2000 WI App 37

(Also reported in 607 N.W.2d 333.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Randy S. Parlee* and *Sherry A. Knutson* of *Millers Classified Ins. Co.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph G. Doherty* and *Patrick R. Griffin* of *Bunk, Doherty & Griffin, S.C.* of West Bend.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1.   ANDERSON, J.   Scott R. Meyer was seriously injured at work when a semi-trailer truck backed into him, crushing him between the truck and a loading dock. The truck was owned by his employer and insured by Michigan Mutual Insurance Co. (Michigan Mutual). The truck's liability policy contains a $1 million limit.[1] Meyer also sought coverage from several policies issued by Millers Classified Insurance Co. (Millers). Millers appeals from a declaratory judgment, holding that its underinsured motorist (UIM) policies entitled Meyer to $1.5 million in insurance coverage.

¶ 2.   At issue are the insurance policies Millers issued to Meyer and his parents. Meyer had a personal automobile liability insurance policy with a UIM liability limit of $50,000 per person. Meyer concedes that there is no coverage under this policy.

¶ 3.   Meyer's parents (the Meyers) also had personal automobile liability insurance policies, issued by

---

[1] In a separate lawsuit, the court held that Michigan Mutual's policy covered Meyer for the entire policy limit of $1 million. Michigan Mutual has appealed that judgment.

Millers, that provided UIM coverage of $250,000 per person. These policies covered two separate vehicles, and a separate premium was paid for each vehicle. The policies define "underinsured motor vehicle" as a "land motor vehicle or trailer . . . to which a bodily injury liability bond or policy applies at the time of the accident but its limit of bodily injury liability is less than the limit of liability for this coverage."

¶ 4. Additionally, the Meyers purchased an umbrella, or excess, liability policy from Millers that provided a $1 million liability limit per occurrence. Because the umbrella policy expressly excluded UIM coverage, the Meyers purchased an endorsement to provide the UIM coverage. The endorsement stated:

> I hereby accept the opportunity to purchase the above coverages [UIM and uninsured motorist] and agree to maintain in full force Bodily Injury limits of $250,000 each person and $500,000 each occurrence for Underlying Uninsured Motorist Coverage and Underlying Underinsured Motorist Coverage.

Neither the umbrella policy nor the endorsement contains a definition of "Underinsured Motorist Coverage."

¶ 5. Millers moved the circuit court for declaratory judgment, seeking a declaration that UIM coverage did not exist under any of its policies issued to Meyer or his parents. Millers argued that its policies do not provide UIM coverage because the liability limit applicable to the vehicle that struck Meyer is not lower than the limits contained in the Millers policies.

¶ 6. After hearing oral arguments on the issue, the circuit court held that Millers's policies provided $1.5 million in UIM coverage for Meyer's accident and granted summary judgment in favor of Meyer. The cir-

cuit court reasoned that the umbrella policy was ambiguous and interpreted it in favor of providing coverage. It then compared a $1.25 million UIM coverage amount—$250,000 from the primary UIM policy plus $1 million from the umbrella policy—to the truck's $1 million Michigan Mutual liability policy and determined Millers's coverage to be greater. Millers appeals.

¶ 7. Millers disputes the declaratory judgment in two respects. First, because the primary policy does not provide UIM coverage for Meyer's accident, it argues that the umbrella policy, likewise, provides no UIM coverage. It contends that the umbrella policy's UIM coverage is not ambiguous because a reasonable insured person would assume that the same definition for UIM coverage as provided in the underlying primary policy would be used for the umbrella policy's definition. Second, it disagrees with how the court compared its policy to Michigan Mutual's. Contending that the Meyers' policies should be compared individually to Michigan Mutual's, it argues that Michigan Mutual's UIM liability limit of $1 million is greater than its policy limits of $250,000.

¶ 8. The interpretation of an insurance contract is a question of law that this court decides independently of the trial court. *See Davis v. Allied Processors, Inc.*, 214 Wis. 2d 294, 298, 571 N.W.2d 692 (Ct. App. 1997). When construing an insurance policy, our objective, like construing any contract, is to ascertain the intentions of the parties. *See id.* This is determined by considering what a reasonable person in the position of the insured would have understood the policy to mean. *See id.*

¶ 9.   Whether the policy's language is ambiguous is also a question of law. *See id.* Ambiguity exists if the policy's words or phrases are susceptible to more than one reasonable interpretation. *See Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990). Any ambiguities should be construed in favor of coverage. *See id.*

¶ 10.   Millers argues that Meyer's accident is not covered under its UIM coverage because the tortfeasor's insurer, Michigan Mutual, provides a greater liability limit than its policies do. Michigan Mutual's policy provides $1 million in liability coverage. Millers issued two primary policies to the Meyers with UIM liability limits of $250,000 and an umbrella policy with a UIM liability limit of $1 million. Millers urges that the correct way to compare its policies to Michigan Mutual's is individually. In other words, we should view it as issuing three separate policies to the Meyers. Each policy with a $250,000 liability limit is obviously less than Michigan Mutual's, and the umbrella policy's liability limit is only equal to, not greater than, Michigan Mutual's. Thus, Millers's policies do not provide UIM coverage. To resolve this dispute, we must determine the correct method for comparing the insurance policies. Our first step is to examine whether the umbrella policy should be considered as a separate policy or, rather, in conjunction with the underlying primary policy.

¶ 11.   In support of its argument that we should view the primary and umbrella policies individually, Millers relies on *Krech v. Hanson*, 164 Wis. 2d 170, 473 N.W.2d 600 (Ct. App. 1991); *Engstrom v. MSI Insurance Co.*, 198 Wis. 2d 195, 542 N.W.2d 481 (Ct. App.

1995); and *Smith*. However, as we discuss below, we find each of these cases distinguishable from our facts.

¶ 12. The *Krech* plaintiff argued that two policies, issued by the same insurance carrier for two different vehicles and paid for by separate premiums, should be added together, or stacked, to find UIM coverage. *See Krech*, 164 Wis. 2d at 172. The court disagreed, concluding that stacking is only permitted after coverage has been found. *See id.* at 173.

¶ 13. In the present case, Millers suggests that *Krech* dictates that all of its policies should be compared individually to Michigan Mutual's to determine whether coverage exists. We disagree. In *Krech,* the policies at issue were all primary ones, not primary and umbrella policies. This is also the situation in *Smith*.[2] An umbrella policy serves a different purpose than a primary policy. It provides the insured with liability coverage in excess of that offered in the primary policy. *See Davis*, 214 Wis. 2d at 299–300. The distinction between primary and excess liability must be considered when making the determination about the amount of liability coverage provided by the policies. Because these cases do not deal with primary and umbrella policies, they do not govern the issues presented here.

¶ 14. We also determine that the present case is not governed by *Engstrom*. The *Engstrom* plaintiff sued her own insurance carrier for UIM benefits. The tortfeasor's insurance carrier had already paid liability

---

[2] The *Smith v. Atlantic Mutual Insurance Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990), court held that because the plaintiff's primary UIM coverage was equal to that of the tortfeasor's, the tortfeasor's vehicle did not qualify as an "underinsured motor vehicle" according to the plaintiff's policy's terms. *See id.* at 811.

coverage totaling $125,000 for two policies—a $100,000 liability policy that covered the tortfeasor's father's car, which was driven in the accident, and a $25,000 liability policy insuring the tortfeasor on his own vehicle. *See Engstrom,* 198 Wis. 2d at 199. Because the plaintiff had $50,000 in personal UIM coverage, she argued that the court should only look at the tortfeasor's $25,000 policy and find UIM coverage. *See id.* at 200.

¶ 15. The tortfeasor's insurance carrier responded that the court should consider the $100,000 policy of the vehicle driven in the accident because that policy was primary and the $25,000 policy was excess. *See id.* at 201. The court compared the policies individually and found UIM coverage. The court did not address the issue of primary versus excess coverage because the tortfeasor's insurance carrier had already paid on behalf of both policies. *See id.* at 203. As a result, we do not find *Engstrom* instructive on the issue of whether primary and umbrella policies are to be construed individually or together when comparing policy liability limits for UIM coverage; rather, this is an issue of first impression in our state.

¶ 16. Millers's umbrella policy does not contain a definition for its UIM coverage. Because the policy offers no definition for its UIM coverage, Meyer asserts that the policy can only be construed as ambiguous, or capable of more than one interpretation. Millers contends that the umbrella policy's UIM coverage is not ambiguous because the primary policy's definition applies. However, the umbrella policy contains no language stating that its coverage is the same as that in the primary policy. We determine that without the guidance of a coverage definition, ambiguity exists over how the coverage should be construed. Therefore, we

consider the intentions of the parties when agreeing to the policy. *See Davis*, 214 Wis. 2d at 298.

¶ 17. The purpose of a UIM policy is to compensate its purchaser if a third party's policy's liability limits do not adequately compensate for his or her injuries. *See Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 654, 436 N.W.2d 594 (1989), *overruled on other grounds by Mattheisen v. Employers Health Ins. Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995). In this case, the Meyers bought primary UIM policies from Millers with liability limits of $250,000. Additionally, the Meyers opted to purchase the umbrella policy, providing a UIM liability limit of $1 million. The only reasonable interpretation for the Meyers purchasing the umbrella policy is that they wanted to increase the underlying policy's UIM liability limit. Indeed, umbrella policies are viewed as excess liability coverage. *See Davis*, 214 Wis. 2d at 299–300. In fact, this conclusion is supported by the policy's language. For example, to maintain the umbrella policy in full force and effect, the policy requires that the Meyers keep the underlying UIM policy effective. We conclude that when purchasing the umbrella policy, the Meyers intended to add its liability limit to the underlying UIM policy's liability limit. Accordingly, coverage should be determined by considering the liability limits of the two policies together.

¶ 18. Because we hold that the primary and umbrella policies should be considered together for determining coverage, the Millers's policies provided at least a $1.25 million liability limit. This amount is greater than the Michigan Mutual policy's liability.

Therefore, we determine that Millers must provide UIM coverage in this case.

¶ 19.   Because we conclude that UIM coverage exists, we will now consider Meyer's argument that the two primary automobile policies should be stacked. "Wisconsin law provides that although two motor vehicles may be listed as insured on one document, if separate premiums are paid with regard to each vehicle, the document in fact represents two separate policies." *Krech*, 164 Wis. 2d at 173. If these conditions are met, then the two policies' coverage amounts may be stacked, or aggregated. *See Burns v. Milwaukee Mut. Ins. Co.*, 121 Wis. 2d 574, 576–79, 360 N.W.2d 61 (Ct. App. 1984).

¶ 20.   In this case, these conditions have been met and the two primary policies will be stacked. The Meyers maintained two personal automobile liability insurance policies with Millers. Each policy covered a separate vehicle, was paid for by a separate premium and provided UIM coverage of $250,000 per person. The aggregate of these two policies provides Meyer with $500,000 of coverage. The umbrella policy provides an additional $1 million of coverage. Therefore, Meyer is entitled to $1.5 million in UIM benefits from Millers.

*By the Court.*—Judgment affirmed.