NATIONAL–BEN FRANKLIN INSURANCE COMPANY OF ILLINOIS, Plaintiff,

v.

Edward LEVERNIER, Lawrence Hoffman, Northern Insurance Company of New York, Darlene Rickert, Kenneth Pingel, Michael Pingel, Troy Plass and General Casualty Company of Illinois, Defendants.

No. 01–C–1166.

United States District Court, E.D. Wisconsin.

March 28, 2003.

Barbara A. O'Brien, Attorney at Law, Borgelt Powell Peterson & Frauen, Milwaukee.

Eric S. Darling, Attorney at Law, Schmidt Darling & Erwin, Milwaukee.

Thomas R. Schrimpf, Attorney at Law, Hinshaw & Culbertson, Milwaukee.

Terry E. Nilles, Beth J. Kushner, Attorneys at Law, von Briesen Purtell & Roper, Milwaukee.

James E. Mercante, Attorney at Law, Rubin Florella Friedman, New York, NY.

Michael S. Siddall, Attorney at Law, Herrling Clark Hartzheim & Siddall, Appleton.

John T. Schomisch, Jr., Attorney at Law, Dilley & Schomisch, Appleton.

Michael R. McCanna, Jarrod J. Papendorf, Attorneys at Law, McCanna Konz Dudas Kewley & Papendorf, Appleton.

Thomas L. Williams, Attorney at Law, Gabert Williams & Farb, Appleton.

Steven L. Wilson, Attorney at Law, Wilson Law Office, Appleton.

Robert F. Johnson, Attorney at Law, Cook & Franke, Milwaukee.

### DECISION AND ORDER

GORENCE, United States Magistrate Judge.

### NATURE OF THE CASE

The plaintiff, National Ben–Franklin Insurance Company of Illinois (National Ben–Franklin), filed this action seeking a declaration that it does not owe a duty of indemnification or defense to its insured, defendant Edward Levernier. In the alternative, the plaintiff seeks a declaration that its policy is excess to that of defendants Northern Insurance Company of New York (Northern Insurance) and Gen-

eral Casualty Company of Illinois (General Casualty).

This action is based on admiralty and maritime jurisdiction. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1333. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D.Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D.Wis.).

On July 31, 2002, plaintiff National Ben–Franklin filed a motion for summary judgment. (Docket # 99). On the same date, defendant Northern Insurance moved for summary judgment. On August 1, 2002, defendant General Casualty filed its motion for summary judgment. These motions are fully briefed and will be addressed herein.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *McNeal v. Macht,* 763 F.Supp. 1458, 1460–61 (E.D.Wis.1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of a trial-(1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law-is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, all inferences are taken in the light most favorable to the nonmoving party. *Matter of Wade,* 969 F.2d 241, 245 (7th Cir.1992).

### BACKGROUND INFORMATION [1]

On June 25, 1999, a collision occurred between watercraft owned by Lawrence Hoffmann and Troy Plass. On December 14, 2001, Darlene Rickert, individually and as personal representative of the Estate of Mark Rickert, brought suit against Edward Levernier and others for injuries and damages arising out of the collision. This suit is styled *Rickert v. Northern Insurance Company of New York, et al.,* Outagamie County Case No. 01–CV–1410. (Affidavit of Colleen M. Fleming [Fleming Aff.], Exh. A). Michael Pingel and Kenneth Pingel filed intervenor complaints in Outagamie County Case No. 01–CV–1410, alleging injuries and damages as a result of the collision. On June 17, 2002, Troy Plass and his wife, Anne Plass, filed suit against Levernier and others for injuries and damages arising out of the collision. This suit is styled *Plass v. Northern Insurance Company of New York, et al.,* Outagamie County Case No. 02–CV–707. (Fleming Aff., Exh. D).

---

1. This background information is taken from the proposed findings of fact of defendant

General Casualty Company which are undisputed.

### RELEVANT UNDISPUTED FACTS[2]

During the fall of 1998, defendant Lawrence Hoffman (Hoffman) purchased a 37-foot Sea Ray yacht. Hoffman's boat had twin inboard engines with in excess of 50 horsepower.

On June 25, 1999, defendant Edward Levernier (Levernier), Hoffman and four other passengers set out on Hoffman's boat for a trip on Lake Michigan from Racine, Wisconsin to Sturgeon Bay, Wisconsin. Hoffman's boat was a 37-foot Sea Ray 370 DA. Levernier arrived at the Racine marina about 10:00 a.m. and the group left aboard Hoffman's boat between 10:30 and 11:00 a.m. Levernier did not discuss the route or fuel supply with Hoffman, did not pay attention to the fuel gauges that day and did not discuss any planned stops along the way with Hoffman.

The day before, on June 24, 1999, Hoffman charted the course from Racine to Sturgeon Bay. He entered the course to Sturgeon Bay on the boat's GPS, by setting waypoints with four legs for manual turns. Those legs included the mouth of the Racine Harbor to Wind Point, Wind Point to the right of the Sturgeon Bay channel entrance, Sturgeon Bay channel entrance to the break wall of Sturgeon Bay and the break wall to the harbor at Sturgeon Bay. Levernier did not discuss the planned route with Hoffman.

Once the boat was underway on June 25, 1999, Hoffman engaged the automatic pilot on the boat just outside of the Racine harbor. In order to engage the automatic pilot on his boat, Hoffman had to enter waypoints obtained from an electronic chart and push the go button. Once the automatic pilot is engaged, the boat's steering wheel is ineffective until the automatic pilot is disengaged. Hoffman set the boat's speed. Hoffman had to set the engine speed manually and there were two throttles on his boat. Hoffman had set his boat's automatic pilot so that manual input to turn the boat was required. When the boat reached the first waypoint at Wind Point outside of Racine, the automatic pilot beeped and Hoffman manually turned the boat.

The only discussion Hoffman had with Levernier about the operation of the boat was at the beginning of the cruise, when Levernier asked him how to turn off the automatic pilot. Hoffman also set the engine speed and testified that the operator of the boat has the responsibility to make sure that everything is "secure, safe." (Affidavit of Barbara A. O'Brien [O'Brien Aff.], ¶ 3, Exh. B, Deposition of Lawrence Hoffman [Hoffman Dep.] at 49, 133). As operator, according to Hoffman, it is necessary to put on the blowers, turn on the ignition and check the weather. Hoffman set the automatic pilot. However, he set it in such a way that any turns that were necessary would have to be done manually.

Hoffman's boat had radar which would pick up objects within a certain distance of his boat. Hoffman normally set his radar for a distance of three miles. On June 25, 1999, Hoffman chose not to use radar. The radar most likely would have picked any other boat that was within a three-mile radius. Levernier did not know how to operate the radar.

Hoffman's boat traveled uneventfully for the first four hours. During those four hours, Hoffman was the operator of the boat. As originally projected, the trip's waypoints were Wind Point, Sturgeon Bay channel entrance and the break wall at Sturgeon Bay. Hoffman became concerned

---

**2.** As a general matter, unless accompanied by citation, the relevant facts are taken from the parties' proposed findings of fact which are relevant to the issues before the court and which are not disputed. Citations to sources of quoted excerpts have been included, even when those excerpts are undisputed.

about the boat's fuel supply at about 2:25 or 2:30 p.m. when the boat was near Sheboygan, Wisconsin. Prior to that time, Hoffman could not recall if he had left the helm of the boat or asked anyone to watch over the boat for him.

Because of his concern about fuel, Hoffman decided to head for Algoma, Wisconsin. He changed his boat's course, turned off the automatic pilot to change the waypoint to Algoma, and then re-engaged the automatic pilot. To his knowledge, no one else on the boat was aware of this course change. Hoffman turned the boat about eight degrees. No one else on the boat knew that the boat was now headed for Algoma.

For about two to two and one half hours before the change in the waypoint to Algoma, Levernier had been up on the front bow of the boat, sleeping and resting. A few minutes after the change in direction of the boat, Levernier came off the bow and came up to where Hoffman was located at the helm and sat down. There may have been discussion at that point between Hoffman and Levernier concerning the fuel supply. Hoffman told Levernier that they were going to Algoma or Kewaunee, Wisconsin.

Shortly after Levernier joined him, Hoffman left the helm to get a book showing the harbors of Lake Michigan. Hoffman did not alert Levernier to the fact that he was going to get the book. Without saying anything to Levernier, Hoffman stood up and passed in front of Levernier to go to the stairs leading below deck. Levernier had to stand up to let Hoffman pass. To retrieve the book, Hoffman was gone for only a "moment or so." (O'Brien Aff., Exh. B. Hoffman Dep. at 81).

After returning to the helm with the book, Hoffman sat down next to Levernier and looked at the book for about five minutes. The two discussed whether to go to Algoma or Kewaunee. Hoffman decided to go to Algoma. Hoffman glanced at the book for a couple of minutes, closed the book, then got up and left the helm to return the book. Hoffman was gone for only moments to return the book.

As Hoffman was returning to the helm after returning the book and was almost back up the stairs, he felt an impact. Hoffman stabilized himself and then he dove for the throttles on the boat and shut them down.

After the impact, Levernier and Hoffman saw an upside-down boat behind Hoffman's boat. There were people swimming in the water near the boat. Upon observing a boat behind them and three people in the water, Hoffman put the transmission in neutral and tried to calm everyone. Hoffman called mayday on his boat's radio. After determining that it was safe to do so, Hoffman restarted his boat's engine and attempted to back his board toward the other boat and the people in the water. The Hoffman boat had collided with another boat.

Hoffman's boat was in the waters off of Manitowoc/Two Rivers, Wisconsin when the accident occurred. The accident occurred approximately four hours after the boat had left Racine. Neither Hoffman nor Levernier ever saw the other boat prior to impact. Hoffman saw only three people in the water. After the collision, three people came aboard Hoffman's boat. As a result of the collision, one passenger on the other boat, Mark Rickert, drowned and the three passengers, Kenneth Pingel, Michael Pingel and Troy Plass allegedly were injured.

On the day of the trip, Hoffman set the speed at which the boat was traveling at all times and set the direction of travel of the boat at all times during the course of the day. The navigation of the boat was controlled by the settings that Hoffman made relative to the speed and direction of

the boat. Hoffman had made the decision not to use the boat's radar because it was a clear day.

At no time prior to impact did Hoffman ask Levernier to take over operation of the boat. Levernier never touched the throttles that day. Levernier never operated the steering wheel or steering mechanism that day. Levernier never touched the automatic pilot mechanism. At no time on June 25, 1999, did Levernier do anything to affect either the speed or direction of Hoffman's boat. Levernier did not touch the controls of the boat on that day, did not set up the automatic pilot and never touched the steering wheel. Hoffman can recall no specific act that Levernier did the entire time on the boat to manipulate or control the boat.

### National Ben–Franklin's Policy of Insurance

Levernier had a Boat Saver policy of insurance with defendant National Ben–Franklin Insurance, Policy No. 1175170–99, which was effective from April 24, 1999, to April 24, 2000. The policy insured a 24–foot Sea Ray Cruiser owned by Levernier.

Defendant National Ben–Franklin's policy provides in relevant part:

**Operating Other Boats**

We will provide this liability coverage to the named insured and his immediate family, subject to the other provisions of this policy, while operating another boat with the permission of its owner. However, we do not cover loss or damage to the other boat or its boating equipment.

( [O'Brien Aff., ¶ 2, Exh. A, National Ben–Franklin Insurance Company of Illinois policy at 4).

Defendant National Ben–Franklin's policy contained two "other insurance" provisions. The first provision which is under the section entitled, "Operating Other Boats," provides:

If there is any other available insurance, we will provide coverage only as excess over such insurance.

(O'Brien Aff., ¶ 2, Exh. A at 4). The second provision provides:

**Other Insurance**

If there is any other available insurance that would apply in the absence of this policy, this insurance shall apply as excess over the other insurance, but the combined amount shall not exceed the limits of this policy.

(O'Brien Aff., ¶ 2, Exh. A at 8).

### Northern Insurance's Policy of Insurance

Defendant Northern Insurance had in effect at the time of the collision a policy of insurance insuring Hoffman's boat. Northern Insurance Company Policy YT98551535 was in effect from October 1, 1998, to October 1, 1999, and identifies Lawrence P. Hoffman as the named insurer. Northern Insurance Policy YT98551535 defines the term "insured" in part:

The term **Insured** whenever used in this policy includes the **Named Insured** specified on the Declarations page, members of the immediate family of the **Named Insured**, if residents of the same household, or any other person, firm, corporation or legal entity who may be operating the Yacht with the prior permission of the **Named Insured** as long as no charge is made.

(Affidavit of Terry E. Nilles [Nilles Aff.], ¶ 4; Exh. C, Northern Insurance Company Policy YT98551535, at 1).

The policy contains an "other insurance" clause which provides:

Should there be other insurance in force at the time of a loss that would cover the loss in the absence of this policy, then coverage under this policy shall be ex-

cess coverage over all other valid and collectible insurance.

(Nilles Aff., ¶ 4, Exh. C at 2).

### General Casualty's Policy of Insurance

Defendant General Casualty had a homeowner's policy with Levernier in effect at the time of the collision. Defendant General Casualty issued a Preferred Homeowners Policy of insurance to Levernier effective December 29, 1998 to December 29, 1999. The relevant provisions of this policy provide:

### SECTION II–LIABILITY COVERAGES

#### COVERAGE E—Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured;" and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### SECTION III–EXCLUSIONS

1. **Coverage E–Personal Liability and Coverage F–Medical Payments to Others do not apply to "bodily injury" or "property damage:"**

 * * * * * *

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

 * * * * * *

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

 * * * * * *

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured;" . . .

 * * * * * *

### SECTION II CONDITIONS

8. **Other Insurance—Coverage E—Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

(Affidavit of Colleen M. Fleming, ¶ 6 [Fleming Aff.], Exh. E, General Casualty Company's Preferred Homeowners' Policy No. 2834351 at 10–12, 14).

Defendant General Casualty issued a Personal Umbrella Liability endorsement to Levernier which did not become effective until September 29, 1999 and, therefore, does not provide coverage for said collision. (Fleming Aff., Exh. E, Personal Umbrella Liability Endorsement; Amended Declaration [issued November 4, 1999] at 1).

## ANALYSIS

### Choice of Law

The court must first determine whether to apply Wisconsin law or Illinois law to the parties' motions for summary judgment. Defendant National Ben–Franklin contends that the correct choice of law with respect to its motion is that of Illinois because the policy was issued in Illinois, citing *Belland by Rosenberg v. Allstate Ins. Co.*, 140 Wis.2d 391, 396, 410 N.W.2d 611 (Wis.Ct.App.1987). Defendant National Ben–Franklin concedes that Illinois law and Wisconsin law are similar so that application of either results in the same conclusion.

Defendant Northern Insurance did not raise the choice of law issue. Rather, it analyzed its policy provisions pursuant to Wisconsin law.

Defendant General Casualty contends that both Illinois and Wisconsin have significant contacts with the subject matter of this case and, thus, it does not contend that either Wisconsin law or Illinois law is applicable to the facts of this case. Rather, defendant General Casualty analyzes its motion under both Wisconsin and Illinois law stating that regardless of which law applies, it is entitled to the relief it seeks.

Defendant Rickert contends that the court should apply Wisconsin law because: the boat was kept in Racine, Wisconsin; the boat originated in Wisconsin on the day of the accident; and the accident occurred in Wisconsin. Defendant Levernier contends that there is no conflict of law issue in this case because the result would be identical under either Wisconsin law or Illinois law.

 "Even in the absence of a 'true conflict,' ... [the federal court is] still obliged to choose the applicable law." *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir.1994) In determining the applicable law, the court looks to the choice of law rules of the state in which it sits. *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 [1941] ). "Which state's law applies under the conflict of law rules is a pure question of law." *Schimpf v. Gerald, Inc.*, 52 F.Supp.2d 976, 1001 (E.D.Wis.1999) (citing *Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1300 [7th Cir.1997] ).

 Wisconsin courts apply a two-step analysis for choice of law decisions. *Heath v. Zellmer*, 35 Wis.2d 578, 591, 151 N.W.2d 664, 669 (Wis.1967). The court first determines if a conflict exists between the laws of the representative states. *Id.* If a conflict exists, and it is outcome determinative, the court then looks at the contacts between the states. *Id.* However, if no such conflicts exists, the law of Wisconsin applies. *Schimpf*, 52 F.Supp.2d at 1002; *see also, International Administrators, Inc. v. Life Ins. Co. of North America*, 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). The parties agree that no conflict exists between Wisconsin law and Illinois law. Accordingly, the court will apply Wisconsin law.

### Insurance Policy Construction

 The construction of an insurance policy is amenable to summary judgment because it presents a question of law. *Rhein Bldg. Co. v. Gehrt*, 21 F.Supp.2d 896, 899 (E.D.Wis.1998); *Heil Co. v. Hartford Acc. and Indem., Co.*, 937 F.Supp. 1355 (E.D.Wis.1996) (citing *U.S. Fire Ins. Co. v. Good Humor Corp.*, 173 Wis.2d 804, 819, 496 N.W.2d 730, 735 [1993]; *Raby v. Moe*, 153 Wis.2d 101, 109, 450 N.W.2d 452 [Wis.1990] ). Both the interpretation of words or clauses in an insurance policy and the determination of whether coverage exists under that policy are questions of law for the court. *Doyle v. Engelke*, 219

Wis.2d 277, 284, 580 N.W.2d 245, 248 (Wis. 1998) (citing *Just v. Land Reclamation, Ltd.*, 155 Wis.2d 737, 744, 157 Wis.2d 507, 456 N.W.2d 570 [Wis.1990]; *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis.2d 808, 810, 456 N.W.2d 597 [Wis.1990] ).

 In a dispute about coverage, the insured has the burden of proving that coverage applies. *Fernandez v. Strand,* 63 F.Supp.2d 949, 953 (E.D.Wis.1999) (citing *Just v. Land Reclamation, Ltd.*, 151 Wis.2d 593, 605, 445 N.W.2d 683 [Wis. Ct.App.1989], *rev'd on other grounds,* 155 Wis.2d 737, 456 N.W.2d 570 [1999] ). However, if the insurer relies on an exclusion to deny coverage, the insurer has the burden of demonstrating that the exclusion is applicable. *Fernandez,* 63 F.Supp.2d at 953.

 The interpretation of an insurance policy is governed by the same principles of construction which apply to contracts in general. *Seats Inc. v. Nutmeg Ins. Co.*, 178 Wis.2d 219, 223, 504 N.W.2d 613, 615 (Wis.Ct.App.1993). Where the policy terms are unambiguous, a court applies those terms to the facts rather than engage in construction. *Id.* " 'A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean.' " *School Dist. of Shorewood v. Wausau Ins. Companies,* 170 Wis.2d 347, 367, 488 N.W.2d 82, 88–89 (Wis.1992) (quoting *Caporali v. Washington Nat. Ins. Co.*, 102 Wis.2d 669, 675–76, 307 N.W.2d 218 [1981] ).

### *National Ben–Franklin Insurance Motion for Summary Judgment*

Defendant National Ben–Franklin filed a motion for summary judgment seeking a declaration that its policy of insurance does not provide coverage for the claims arising from the June 25, 1999, boating accident. In the alternative, defendant National Ben–Franklin seeks a declaration that its policy of insurance is excess to that of the other insurers.

Defendant Levernier had a policy of insurance with plaintiff National Ben–Franklin insuring a boat he owned. The National Ben–Franklin policy contained the provision which provided in relevant part:

**Operating Other Boats**

We will provide this liability coverage to the named insured and his immediate family, subject to the other provisions of this policy, while operating another boat with the permission of its owner. However, we do not cover loss or damage to the other boat or its boating equipment.

(O'Brien Aff. ¶ 2, Exh. A at 4). Thus, plaintiff National Ben–Franklin's policy of insurance provides coverage only if defendant Levernier was operating defendant Hoffman's boat at the time of the accident. The policy does not define "operate" or "operating."

Plaintiff National Ben–Franklin contends that defendant Levernier was not operating the boat at the time of the accident. Plaintiff National Ben–Franklin contends that defendant Levernier could not have been operating the boat because: 1) at no time prior to the impact did defendant Hoffman ask defendant Levernier to take over operation of the boat; 2) defendant Levernier never touched the throttles that day; 3) defendant Levernier never operated the steering wheel or

steering mechanism that day; 4) defendant Levernier never touched the automatic pilot mechanism; and 5) defendant Hoffman could recall no specific act that defendant Levernier did the entire time on the boat to manipulate or control the boat.

In response, defendant Darlene Rickert contends that in determining whether defendant Levernier was operating the boat, the court should look to the definitions of "operate" and "operator" in Wis. Stat. § 30.50. Defendant Rickert focuses on the definition of operator: "Operator means a person who is engaged in the operation of a motorboat, who is responsible for the operation of a motorboat or who is supervising the operation of a motorboat." Wis. Stat. § 30.50(8r). Defendant Rickert contends that the history of defendants Levernier and Hoffman's relationship, their mutual understanding of who would operate the boat and when, the facts of the situation and the relative spatial positions of the two at the time of the incident support her position that defendant Levernier was an operator.

Also in response, defendant Levernier contends that there is no dispute that defendant Hoffman was operating the boat for an extended period of time prior to leaving the helm and going down below, even though during that time he was not required to touch any of the controls or do anything other than look out over the water. Defendant Levernier also contends that the injured claimants will argue that there is no less reason to assume that he was operating the boat while defendant Hoffman was down below even though he also was not required to actively touch the controls or do much of anything else absent an emergency.

 National Ben–Franklin's policy of insurance provides coverage for defendant Levernier "while operating another boat." Thus, contrary to defendant Rickert's assertions, the definition of "operator" is inapplicable to the facts of this case. The only definition that would be applicable is that of "operate." Wis. Stat. § 30.50(8) defines "operate" as "to navigate or otherwise employ."

Defendant Levernier did not "navigate or otherwise employ" defendant Hoffman's boat. The undisputed facts establish that defendant Hoffman did not ask defendant Levernier to take over operation of the boat. They also establish that defendant Levernier never touched the throttles or controls of the boat that day, never touched the automatic pilot mechanism, never operated the steering wheel or steering mechanism, and did not do anything to affect either the speed or direction of defendant Hoffman's boat on June 25, 1999. When asked, defendant Hoffman could not recall any specific act that defendant Levernier did to manipulate or control the boat. Defendant Hoffman testified that he expected defendant Levernier to operate the boat while he was down below. However, defendant Hoffman's expectations do not establish that defendant Levernier actually was operating the boat at the time of the accident.

Defendant Rickert contends that the Wisconsin courts have been liberal in defining what constitutes an "operator," citing *Milwaukee County v. Proegler*, 95 Wis.2d 614, 291 N.W.2d 608 (Wis.Ct.App. 1980) and *Village of Elkhart Lake v. Borzyskowski*, 123 Wis.2d 185, 366 N.W.2d 506 (Wis.Ct.App.1985). However, the facts of this case are distinguishable from the facts of the cited cases. As indicated by the plaintiff, in each of the cited cases, the person found to be the operator of the motor vehicle had exercised physical control or manipulation over the motor vehicle. In both cases, the person found to be the operator of the motor vehicle had started the car, driven the car, stopped the car, left the car running, and then fell

asleep. In this case, however, the undisputed facts establish that defendant Levernier did not exercise physical control or manipulation over Hoffman's boat on June 25, 1999.

Thus, defendant Levernier was not operating Hoffman's boat as required by National Ben–Franklin's policy of insurance. Therefore, defendant National Ben–Franklin's motion for summary judgment seeking a declaration that its policy does not provide coverage to defendant Levernier is granted.

Defendant National Ben–Franklin's motion for summary judgment also seeks a declaration that its policy provides coverage in excess to other applicable policies. Defendant Northern Insurance filed a response brief contending that National Ben–Franklin's coverage is not in excess to Northern's coverage. However, because the court has determined that defendant National Ben–Franklin's policy of insurance does not provide coverage to defendant Levernier, it is unnecessary to address whether National Ben–Franklin's coverage is in excess to other applicable policies.

### Northern Insurance Company's Motion for Summary Judgment

Defendant Northern Insurance has filed a motion for summary judgment seeking a declaration that defendant Levernier is not an additional insured under its policy of insurance issued to defendant Hoffman. In the alternative, defendant Northern Insurance seeks a declaration that its policy of insurance is excess to the other insurance policies.

Defendant Northern Insurance issued a policy of insurance for defendant Hoffman's boat. The policy defines "insured" to include the named insured, members of the named insured's immediate family and "any other person firm, corporation or legal entity who may be operating the yacht

with the prior permission of the named insured as long as no charge is made." (Nilles Aff. ¶ 4, Exh. C at 1). Like defendant National Ben–Franklin's policy, the Northern Insurance policy does not define "operate" or "operating."

Defendant Northern Insurance asserts that in construing the terms of the policy, the court should look to the dictionary definition of the term "operate," as well as the definitions of "operate" and "operation of a motorboat" found in Wis. Stat. §§ 30.50(8) and 30.50(8g) respectively. The dictionary defines the term "operate" as "to exert power over or influence; to produce an effect." *Webster's Third New International Dictionary—Unabridged* (Merriam–Webster, Inc.1986).

The portion of the Wisconsin statutes that regulates boating defines the term "operate" as "to navigate or otherwise employ," Wis. Stat. § 30.50(8), and defines the term "operation of a motorboat" to mean "controlling the speed or direction of a motorboat," Wis. Stat. § 30.50(8g). Defendant Northern Insurance contends that these definitions all involve the exertion or exercise of physical control over something. Defendant Northern Insurance further contends that the definitions are consistent with the use of the term by reasonable lay persons.

Defendant Northern Insurance points out that defendant Levernier was not consulted about the route the boat would take or whether any stops would be taken along the way. Additionally, defendant Northern Insurance states that defendant Levernier was not consulted about the boat's fuel supply or whether the boat would need to take on additional fuel during the trip. Therefore, defendant Northern contends that defendant Levernier did not exert any power or influence over the boat or its course, did not navigate or otherwise employ the boat, and did not control the

speed or direction of the boat. Accordingly, defendant Northern maintains that defendant Levernier was not operating the boat and is not an additional insured under the terms of its policy of insurance.

In response, defendant Rickert submitted a brief almost identical to the one she submitted in response to National Ben–Franklin's motion for summary judgment. Defendant Levernier submitted only one brief in response to all the motions for summary judgment. Thus, both defendant Rickert's and defendant Levernier's arguments are as set out with respect to defendant National Ben–Franklin's motion for summary judgment.

The court's analysis of defendant Rickert's reliance on Wis. Stat. § 30.50(8r), defining "operator" is equally applicable when analyzing defendant Northern Insurance's motion for summary judgment. Moreover, the court's analysis of defendant Rickert's cited case law is also applicable when analyzing defendant Northern Insurance's motion for summary judgment.

 Contrary to defendant Rickert's and defendant Levernier's contentions, defendant Levernier's ability to exert or exercise physical control over the boat's speed or direction does not equate with operating the boat. Moreover, defendant Hoffman's assumption that, if he was momentarily distracted, defendant Levernier would take over the operation of the boat does not mean that defendant Levernier was operating the boat on June 25, 1999.

In support of its motion for summary judgment, defendant Northern cites to the recent Wisconsin Supreme Court case of *Burg v. Cincinnati Cas. Ins. Co.*, 254 Wis.2d 36, 645 N.W.2d 880 (Wis.2002) to support its position. In *Burg*, the court construed the term "operate" in the context of a statute requiring a snowmobile's head and tail lamps to be illuminated when a snowmobile is operated at night. The portion of the Wisconsin statutes regulating snowmobiles defines "operate" as "the exercise of physical control over the speed or direction of a snowmobile or the physical manipulation or activation of the controls of a snowmobile necessary to put it in motion." Wis. Stat. § 350.01(9r).

The court in *Burg* held that the act of sitting on a snowmobile with its engine off did not constitute the exercise of some form of control over a running vehicle. 645 N.W.2d at 886. The court also stated that the term "operate" involves the exercise of physical control over the speed or direction of the snowmobile and the physical manipulation or activation of the snowmobile's controls. *Id.* at 884–85.

Defendant Northern Insurance asserts that defendant Levernier similarly did not exert or exercise any control over defendant Hoffman's boat. Defendant Northern Insurance also asserts that defendant Levernier did nothing to affect either the speed or direction of the boat. Rather, according to defendant Northern Insurance, defendant Levernier was a passenger on defendant Hoffman's boat and he never assumed operation of the boat or touched the wheel or any of its controls.

 In this case, the undisputed facts establish that defendant Levernier did not exercise physical control or manipulation over Hoffman's boat on June 25, 1999. Defendant Levernier did not "navigate or otherwise employ" defendant Hoffman's boat. The undisputed facts establish that defendant Hoffman did not ask defendant Levernier to take over operation of the boat. They also establish that defendant Levernier never touched the throttles or controls of the boat that day, never touched the automatic pilot mechanism, never operated the steering wheel or steering mechanism, and did not do anything to affect either the speed or direction of defendant Hoffman's boat on June 25,

1999. In fact, when asked, defendant Hoffman could not recall any specific act that defendant Levernier did to manipulate or control the boat.

Defendant Hoffman testified that he expected defendant Levernier to operate the boat when he went down below. However, defendant Hoffman's expectations do not establish that defendant Levernier actually was operating the boat at the time of the accident.

In light of the foregoing, the court concludes that defendant Levernier was not operating Hoffman's boat as required by Northern Insurance's policy of insurance. Therefore, defendant Northern Insurance's motion for summary judgment seeking a declaration that it's policy does not provide coverage to defendant Levernier is granted.

Defendant Northern Insurance's motion for summary judgment also seeks a declaration that its policy provides coverage in excess to other applicable policies. Defendant National Ben–Franklin filed a response brief to defendant Northern Insurance's motion for summary judgment, but the brief did not address Northern Insurance's argument that its policy of insurance is excess to the other insurance policies. Nonetheless, because the court has determined that defendant Northern Insurance's policy of insurance does not provide coverage to defendant Levernier, it is unnecessary to address whether such coverage is in excess to other applicable policies.

### General Casualty's Motion for Summary Judgment

■ Defendant General Casualty's motion for summary judgment seeks a declaration that it does not have a duty to defend or indemnify defendant Levernier.

Defendant General Casualty also seeks a declaration that it is entitled to reimbursement of defense fees provided to defendant Levernier for defense of the underlying actions. In the alternative, defendant General Casualty seeks a declaration that its policy of insurance is excess over the other insurance policies.

Defendant General Casualty issued a Preferred Homeowners Policy of insurance to defendant Levernier effective December 29, 1998 to December 29, 1999.[3] Defendant General Casualty's policy excludes coverage for "bodily injury" arising out of "the ownership, maintenance, use, loading or unloading of an excluded watercraft." "Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor or are sailing vessels, whether owned by or rented to an 'insured'." However, the exclusion does not apply to watercraft that are "not sailing vessels" and are powered by "Inboard or inboard-outdrive engine or motor engine or motor power of more than 50 horsepower not owned by or rented to an 'insured'." The boat at issue in this case had twin inboard engines in excess of 50 horsepower. Thus, it was not an excluded watercraft under the policy.

■ An insurer has the obligation to defend its insured against a lawsuit if the complaint "alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy." *Sola Basic Industries, Inc. v. U.S. Fidelity & Guaranty Co.*, 90 Wis.2d 641, 646, 280 N.W.2d 211, 213–14 (Wis.1979). The existence of the duty to defend depends solely on the nature of the claims asserted in the complaint and has nothing to do with the merits of the claim. *Radke v. Fireman's Fund Ins. Co.*, 217 Wis.2d 39,

---

**3.** Defendant General Casualty also issued a Personal Umbrella Liability endorsement to defendant Levernier. The undisputed facts establish that the policy did not become effective until September 29, 1999, and, therefore, does not provide coverage for the collision.

43, 577 N.W.2d 366 (Wis.Ct.App.1998). If the complaint contains allegations that, if proven, would be covered by the insurance policy, the insurer has a duty to defend. *Grube v. Daun*, 173 Wis.2d 30, 72, 496 N.W.2d 106 (Wis.Ct.App.1992).

 The duty to defend is broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. *General Cas. Co. of Wisconsin v. Hills*, 209 Wis.2d 167, 176 n. 11, 561 N.W.2d 718, 722 n. 11 (Wis. 1997). "If there is any doubt about the duty to defend, it must be resolved in favor of the insured." *Elliott v. Donahue*, 169 Wis.2d 310, 321, 485 N.W.2d 403, 407 (Wis. 1992). However, "[t]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured." *Nichols v. American Employers Ins. Co.*, 140 Wis.2d 743, 747, 412 N.W.2d 547, 549 (Wis.Ct.App.1987) (quoting *Grieb v. Citizens Cas. Co. of New York*, 33 Wis.2d 552, 148 N.W.2d 103, 106 (Wis.1967)).

Defendant General Casualty maintains that in order for the policy to provide coverage when the boat is not an excluded watercraft, the bodily injury must arise out of the ownership, maintenance, use, loading or unloading of the boat. Therefore, according to defendant General Casualty, the only question for the court is whether the bodily injuries alleged in the underlying complaints arose out of defendant Levernier's "use" of defendant Hoffman's boat.

Defendant General Casualty contends that the following facts support its position that the bodily injuries at issue did not arise out of defendant Levernier's use of the boat: at no time prior to the accident did defendant Hoffman ask defendant Levernier to assume operation of his boat; defendant Levernier did nothing to affect either the direction or speed of the boat; defendant Levernier did not touch the controls of defendant Hoffman's boat or set up the automatic pilot; and defendant Levernier never touched the steering wheel.

In response, defendant Levernier contends that the plain language of the General Casualty policy does not limit coverage to "bodily injury" arising out of the "ownership, maintenance, use, loading or unloading of a boat." Rather, defendant Levernier contends that because the boat at issue is not an excluded watercraft, the policy provides coverage regardless of whether the bodily injury arose out of his "use" of defendant Hoffman's boat.

As previously indicated, defendant Rickert's responsive briefs to each of the motions for summary judgment are nearly identical. In response to defendant General Casualty's motion for summary judgment, defendant Rickert does directly address a case cited by General Casualty. Defendant Rickert asserts that the unpublished case cited by defendant General Casualty, *Knoche v. Stracka*, 120 Wis.2d 669, 353 N.W.2d 842, 1984 WL 180258 (1984), provides no "authoritative precedent" and nonetheless, it is distinguishable because it involved a claim against a party not present on the boat at the time of the accident.

 General Casualty's policy of insurance only excludes coverage for "bodily injury" arising out of "[t]he ownership, maintenance, use, loading or unloading of an excluded watercraft." (Fleming Aff., ¶ 6, Exh. E at 10–12). Defendant Hoffman's boat is not an excluded watercraft because it was powered by inboard engines of more than 50 horsepower and was not owned or rented by defendant Levernier. The plain language of General Casualty's policy of insurance does not limit coverage for "bodily injury" to that arising out of the ownership, maintenance, use, loading or unloading when the boat is not an "excluded watercraft." Thus, whether defendant Levernier was "using" defendant

Hoffman's boat is immaterial. *See Travelers Property Casualty Corp. v. Pendergraft*, 1998 WL 856101, 1998 U.S. Dist. LEXIS 19813 (E.D.La.1998) (stating, in dicta, that "[t]he exclusion would not apply if the 85 horsepower inboard motor was not either owned by or rented to the insured, i.e., if the insured had borrowed the jetski from someone.").

General Casualty's policy of insurance provides coverage to defendant Levernier for "bodily injury" resulting from the June 25, 1999, boating accident. Therefore, defendant General Casualty's motion for summary judgment seeking a declaration that it does not have a duty to defend or indemnify defendant Levernier is denied. Accordingly, defendant General Casualty's motion for summary judgment seeking a declaration that is entitled to reimbursement of defense fees provided to defendant Levernier is also denied.

Defendant General Casualty's motion for summary judgment also seeks a declaration that its policy provides coverage in excess to other applicable policies. Defendant National Ben–Franklin filed a response brief to defendant General Casualty's motion for summary judgment. National Ben–Franklin's brief did not address General Casualty's argument that its policy of insurance is excess to the other insurance policies. Defendant Northern Insurance filed a response brief contending that General Casualty's coverage is not excess to Northern Insurance's coverage.

Because the court determined that defendant National Ben–Franklin's policy of insurance and defendant Northern Insurance's policy of insurance do not provide coverage to defendant Levernier, it is unnecessary to address whether National Ben–Franklin's coverage is excess to other applicable policies.

Based on the court's determination, it appears that all the issues in this action have been resolved. The parties are to notify the court in writing as to any remaining issues that need resolution in this case. Such notification must be provided within 15 days of the date of this order. In the absence of notification of remaining issues within 15 days, the court will enter judgment dismissing this action.

### *ORDER*

**NOW, THEREFORE, IT IS ORDERED** that plaintiff National Ben–Franklin Insurance Company of Illinois' motion for summary judgment (Docket # 99) be and hereby is **granted.**

**IT IS FURTHER ORDERED** that defendant Northern Insurance Company of New York's motion for summary judgment (Docket # 104) be and hereby is **granted.**

**IT IS ALSO ORDERED** that defendant General Casualty Company of Illinois' motion for summary judgment (Docket # 108) be and hereby is **denied.**

**IT IS FURTHER ORDERED** that the parties are to notify the court in writing within 15 days of the date of this order as to any remaining issues in this action. In the absence of notification of remaining issues within 15 days, the court will enter direct the entry of judgment dismissing this action.